A01A2356. SUSAN v. THE STATE.
(562 SE2d 233)

BLACKBURN, Chief Judge.

Nicholas Susan was convicted by a jury of five counts of armed robbery, four counts of possession of a firearm during the commission of a crime, and four counts of possession of a firearm by a convicted felon. He appeals, maintaining that the trial court erred in: (1) not granting a new trial due to the insufficiency of the evidence; (2) not

---

granting a new trial due to false statements made under oath by a co-defendant; (3) improperly charging impossibility; and (4) admitting similar transaction evidence. We affirm his convictions.

1. In his first enumeration of error, Susan challenges the sufficiency of the evidence.

> The standard of review for the sufficiency of evidence, in reviewing either a motion for a directed verdict or a motion for new trial, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We view the evidence in the light most favorable to the verdict, and [appellant] no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[1] Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations omitted.) *Willingham v. State*.[2]

Testimony at trial showed that on March 2, 1998, at approximately 11:30 p.m., two masked men entered the Crown gas station on Old Savannah Road in Augusta. One man, who was armed with a dark semi-automatic handgun, forced the lone attendant to empty the register and take money from the money tube of the safe, while the second man took lottery tickets. The men forced the attendant to lie on the floor as they ran from the store.

On the same night, shortly before midnight, two hooded men entered the Golden Pantry on Lumpkin Road in Augusta. One man, who carried a dark semi-automatic handgun, put the gun to the clerk's head and took money from the register and from the clerk's billfold. The other man took lottery tickets. After forcing the clerk to lie on the floor, the men ran from the store with the money and lottery tickets.

On March 5, 1998, at approximately 9:00 p.m., the Pizza Hut Express on Washington Road in Augusta was robbed by two men wearing ski masks. One of the men, who was armed with a dark semi-automatic pistol, told one of the employees to open the safe. When the employee told him that the safe had locked down and could not be opened, the men took money from the register and from the

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Willingham v. State*, 242 Ga. App. 472-473 (530 SE2d 224) (2000).

other employee's purse and fled, after forcing the two employees to lie on the floor.

On the same night, at approximately 10:00 p.m., a small white car parked behind the Subway sandwich shop on Peach Orchard Road in Augusta. Two masked men jumped out of the car and went into the shop, leaving a third person behind the wheel of the car. One of the men was carrying a rusty, black 9 mm pistol. The men took money from the register. One of the robbers also snatched a silver chain from an employee's neck. The robbers then forced the employee to lie on the floor and fled in the white car.

On March 3, 1998, Investigator Kenny Lynch of the Richmond County Sheriff's Office was advised by the Georgia Lottery that a black female had tried to redeem a stolen lottery ticket. He was given a description of both the woman and her car, a small white vehicle. On March 5, Lynch responded to a call that a Subway shop had been robbed. His investigation indicated that a white car was also involved in that robbery. On March 6, Lynch received a call from someone who told him that a man named Eric Mullins and his girlfriend, who drove a white vehicle, had been involved in the Pizza Hut robbery.

When questioned, Mullins denied any involvement in the robbery. As a result of his interview with Mullins, Lynch contacted Elizabeth McKeone. She told Lynch that Mullins had spoken about robberies and a gun; she also said that Mullins's girlfriend had a white car. Lynch contacted Mullins's mother, who told him that Mullins's girlfriend was named Hatcher and that she lived in a nearby apartment complex. Lynch went to the apartment complex and found a small, white Mercury Mystique. He knocked on the door near the car, and Renata Hatcher responded. She acknowledged that the car was hers and identified a photograph of Mullins. She told Lynch that she knew why he was there and agreed to go to the police station.

Hatcher informed Lynch that Mullins was her boyfriend and that she had been involved as the driver in the robberies. She provided details of where she had parked the car for each of the robberies. She also told Lynch that a second man, whom she knew as Nick, was involved in the robberies. When shown a photo lineup, she identified Susan as Mullins's accomplice. Lynch ran a criminal history on Mullins and learned that he and Susan had been involved in a previous armed robbery. Mullins was arrested on March 13.

On the following Monday, Susan came to the police station. Lynch advised Susan of the outstanding warrant. Lynch left the room after securing Susan with leg shackles. When Lynch returned, Susan pulled out a handgun, put it to his own head, and said that he would rather die than go back to jail. After several hours, officers were able to convince Susan to surrender the gun. The gun which the officers

took from Susan was later identified at trial as the gun which had been used in the Crown, Golden Pantry, Pizza Hut, and Subway robberies.

Our review of the record before us shows that there was ample evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Susan was guilty of the offenses with which he was charged.

Susan argues that the uncorroborated testimony of Hatcher, an accomplice, was not sufficient to convict him. With respect to the sufficiency of evidence corroborating an accomplice's testimony,

> a defendant may not be convicted on the uncorroborated testimony of an accomplice. OCGA § 24-4-8. The corroboration must be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. The corroborating evidence may be circumstantial. The sufficiency of corroborating evidence should be peculiarly a matter for the jury to determine.

(Citations and punctuation omitted.) *Short v. State*.[3]

The semi-automatic handgun which the State introduced into evidence connects Susan to the robberies. Susan brought the handgun to the police station. That handgun was identified by various robbery victims as the gun which had been used in the robberies. When shown the gun at trial and asked if he recognized it, John Morris, the clerk at the Crown gas station, said, "Yes, sir. It is the gun because I remember seeing that it was scratched up on the front of it." Both of the employees at the Pizza Hut testified that the gun looked like the one used in that robbery. Finally, the Subway employee described the gun to police "as a large gun, an automatic, rusty — a kind of rusty, black gun, a 9 millimeter," and identified it at trial as the gun that had been pointed at him during the robbery.

There was also testimony from one of the victims that she recognized Susan as the man who had robbed her. During her initial testimony, the victim had stated, "I thought the guy that had a gun on me was a fair-skinned guy with really deep, deep looking eyes." When she returned to the stand and was asked by the prosecuting attorney what she had told him after seeing Susan, she stated, "Yeah, that I

---

[3] *Short v. State*, 234 Ga. App. 633, 635 (1) (b) (507 SE2d 514) (1998).

recognized those — remember, I said I recognized those eyes. I said that's the person that was holding that gun on me. I said, I know those eyes."

The robberies at both the Crown gas station and the Golden Pantry were recorded on videotape, and the jury saw these tapes during the course of the trial and a second time during deliberations. These videotapes were sufficient to support Hatcher's account of the robberies. This enumeration is without merit.

Susan also argues that Hatcher's testimony is in direct conflict with other evidence as Susan is a white male and "each of the victims gave the police a statement that they were robbed by two black males wearing masks." While two of the victims identified both robbers as black in their original statements, one testified on the stand that he had been wrong and that the second suspect "was Hispanic or partially white," while the other stated that he "couldn't swear they was black." Of the two employees at the Pizza Hut, one described one of the suspects as a "fair-skinned guy," but admitted on cross-examination that she could not tell whether either suspect was black or white. The other Pizza Hut employee said that he thought one of the suspects was light skinned, though his initial impression was that both were black, but that he had not gotten a good look because the suspect had told him not to look at him. Finally, the Subway employee testified that one of the suspects was brown, and the other one was "lighter," but he could not discern his race. While there is some conflict in the testimony, "the determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury." (Punctuation omitted.) *Sorrells v. State*.[4] "This court may not substitute its judgment for that of the jury." (Punctuation omitted.) *Cantrell v. State*.[5]

Finally, Susan argues that there were two accomplices in this case, Hatcher and Mullins, and that since Hatcher named Susan as an accomplice and Mullins stated that Susan was not an accomplice, there was no corroboration of Hatcher's testimony. There is no merit to this argument. Mullins's testimony that Susan was not involved in the robberies "created nothing more than a conflict in the evidence for the jury to resolve." *Johnson v. State*.[6] The evidence was sufficient to authorize a rational trier of fact to conclude that Susan was guilty beyond a reasonable doubt of the crimes with which he was charged.

2. Susan next contends that the trial court erred in denying a new trial, alleging that Hatcher made false statements under oath. Susan points out that at trial, Hatcher testified that no promises had

---

[4] *Sorrells v. State*, 218 Ga. App. 413 (1) (461 SE2d 904) (1995).
[5] *Cantrell v. State*, 210 Ga. App. 218, 219 (1) (435 SE2d 737) (1993).
[6] *Johnson v. State*, 247 Ga. App. 157, 161 (5) (543 SE2d 439) (2000).

been made to her in exchange for her testimony, that she had no special deal with the State or the sheriff's department, and that, having been sentenced on the day before the trial, there was "nothing out there" as far as her case was concerned. Susan contends that those statements were not true because Hatcher has filed a post-conviction relief petition in which she states that her plea was negotiated and that her sentence was later reduced in consideration of her cooperation in testifying. In that same petition, she seeks to withdraw her pleas of guilty on the ground that her trial counsel never advised her that she would have to serve a mandatory minimum sentence of ten years. Susan maintains that in giving the jury the impression that she had received a sentence and was testifying without hope of benefit, Hatcher committed false swearing. Under OCGA § 24-9-85 (b), argues Susan, Hatcher's testimony should be disregarded entirely.

There is no evidence that either the sheriff's department or the State had offered Hatcher a plea agreement or a special deal. Nor is there evidence that Hatcher swore falsely when she made her statements to the jury. The trial court observed in denying Hatcher's motion for new trial that there is no way of knowing whether Hatcher's current protestations or her testimony at trial constitutes the false swearing, if any.

Even assuming, however, that Hatcher's statements at trial were false, such fact does not benefit Susan under the facts of this case. OCGA § 24-9-85 (b) provides that "[i]f a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, *unless corroborated by circumstances or other unimpeached evidence.*" (Emphasis supplied.) Susan's involvement in the robberies has been sufficiently established. Hatcher's testimony need not be excluded, even if she did misrepresent to the jury that she had no hopes of a lighter sentence in return for her testimony, as her testimony as to Susan's involvement was corroborated by other unimpeached evidence. *Holbrook v. Rodgers.*[7]

3. In his third enumeration of error, Susan argues that the trial court erred in improperly charging impossibility. The transcript shows that when asked by the trial judge, on two separate occasions, whether he had objections to any of the charges, Susan stated that he had none. "When a trial court asks if there are objections to the charge, counsel must state his objections or reserve the right to object on motion for new trial or on appeal. Otherwise, waiver will result." *Brinson v. State.*[8]

4. In his final enumeration of error, Susan asserts that the trial

---

[7] *Holbrook v. Rodgers*, 105 Ga. App. 219 (124 SE2d 443) (1962).
[8] *Brinson v. State*, 243 Ga. App. 50, 52 (4) (530 SE2d 798) (2000).

court erred by improperly allowing similar transaction evidence to be presented to the jury. Specifically, Susan argues that the prior offense and the offenses in this case are not sufficiently similar.

"On the question of similarity, the trial court's findings will not be disturbed unless 'clearly erroneous.'" *Mitchell v. State*.[9] "In reviewing whether there were sufficient similarities to create a connection between the previous crime and the instant crimes such that the former tends to prove the latter, we focus on the similarities rather than the dissimilarities." *Mitchell v. State*.[10] "Similar transactions need not be identical to the offense being tried but must show sufficient similarity or connection between the independent incidents and the offense at issue." *Jones v. State*.[11]

> The test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character.

(Punctuation omitted.) *Cantrell*, supra at 220 (2).

In this case, the pretrial hearing required by Uniform Superior Court Rule 31.3 (B) was conducted to decide the admissibility of the allegedly similar transaction. The State sought to introduce evidence that on September 2, 1994, Shakirrah Bradshaw, an employee of Papa John's Pizza, delivered pizzas to an address on Wilder Street in Augusta. When she got there, a white male was standing outside. Bradshaw got out of the car and opened the passenger side door to get the pizzas. Before she could turn around, a gun was placed to her head and she was pushed up against the car by several individuals. She was ordered to keep her head turned and not to look. The robbers took the pizza and ran. Bradshaw identified Susan as the white man who had been standing outside. She subsequently learned that Mullins, Susan's co-indictee in the instant case, was among the others who robbed her. Susan was questioned about the robbery and gave police a statement admitting his involvement. He and Mullins both pled guilty to the lesser included offense of robbery by intimidation.

The trial judge determined that evidence of the similar transaction was admissible to show course of conduct and bent of mind and that Susan was the person who committed the independent act. The trial judge also found that there was sufficient similarity and connec-

---

[9] *Mitchell v. State*, 206 Ga. App. 672, 673 (2) (426 SE2d 171) (1992).
[10] *Mitchell v. State*, 249 Ga. App. 520, 522 (1) (548 SE2d 469) (2001).
[11] *Jones v. State*, 239 Ga. App. 733, 734 (1) (521 SE2d 883) (1999).

tion between the prior offense and the crimes charged in this case. We agree.

The State's evidence shows that Susan and a particular co-defendant, Mullins, have been involved as accomplices in armed robberies. Their victims are employees of fast food or convenience stores. The victims have been robbed at gunpoint in situations in which they are vulnerable and isolated. Given these similarities, we cannot say that the trial court erred in its ruling. This enumeration is without merit.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED MARCH 15, 2002.

*Ellis R. Garnett*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.