## A02A1851. NIKITIN v. THE STATE.
### (572 SE2d 377)

BLACKBURN, Chief Judge.

Following his conviction by a jury of sexual battery, two counts of terroristic threats, sexual battery as a lesser included offense of aggravated sexual battery, and aggravated assault, Vladimir Nikitin appeals, arguing that (1) the State committed prosecutorial misconduct and violated *Brady v. Maryland*[1] by presenting perjured testimony and withholding critical evidence, and (2) his right to effective assistance of counsel was abridged. For the reasons set forth below, we affirm.

1. Nikitin maintains that the trial court erred in denying his motion for new trial because the State violated *Brady*, supra, by

---

[10] Supra.
[11] Id. at 77.
[12] Id.
[13] (Citations omitted.) Id. at 80 (2).
[14] See id.
[1] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

presenting perjured testimony and withholding evidence critical to his defense. We do not agree.

In reviewing the denial of a motion for new trial, this Court may consider both the transcript of the motion hearing and the trial transcript, and review is under the standard espoused in *Jackson v. Virginia*[2] to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict. *Carr v. State*.[3] The record shows that on June 5, 1999, Detective Deborah Kalish of the Fulton County Police Department responded to a "fight call" at Nikitin's home. When she arrived, she was met at the door by Nikitin; his wife, Natalie Nikitina; Nikitina's son, Alex Skachov; Julia Potopova, a friend of Nikitina; and Potopova's husband. Kalish testified that Nikitina, who had a burn mark on her neck, claimed that Nikitin had made the mark while trying to choke her with a window blind cord.

Kalish also testified at trial that she photographed the burn mark on Nikitina's neck at the scene that morning. When shown a photograph of Nikitina with a dark mark on her neck, introduced as State's Exhibit 2, Kalish identified the photograph both as the one she had taken that day and also as a fair and accurate depiction of how Nikitina had appeared that morning.

At the hearing on the motion for new trial, it was established that the photograph introduced by the State at trial was not taken by Kalish, but instead had been taken on some later date by either Anna Blau or Lillian Bykhovsky, women who met Nikitina through their work at a battered women's shelter. Kalish was unaware that any photos had been taken by anyone else. Blau and Bykhovsky had given the photograph directly to the original district attorney handling the case. A different prosecutor prepared and tried the case and selected the photo which was introduced at trial. Lillian Bykhovsky's name was in the prosecution's file. It was also established that an Immigration & Naturalization Service form which Nikitin had filled out for Nikitina was part of the prosecution's file.

Nikitin complains that the State violated *Brady* by: withholding Bykhovsky's name and thus depriving him of the opportunity to pursue any exculpatory evidence which she might have been able to provide; withholding the INS form, which would have supported his defense; and presenting Kalish's erroneous testimony. In *Brady*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Carr v. State*, 275 Ga. 185, 188 (563 SE2d 850) (2002).

*Brady*, supra at 87. In *United States v. Agurs*,[4] the Court held that there is a duty to disclose such evidence even though the accused has failed to request it, and in *United States v. Bagley*,[5] it was held that the duty encompasses impeachment evidence as well as exculpatory evidence.

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*.[6]

(a) *Bykhovsky's Identity.* Nikitin's argument that the State violated *Brady* by failing to disclose to him Bykhovsky's identity fails to satisfy the first prong of the *Brady* analysis since Nikitin merely claims that there is a possibility that disclosure of her identity might have led to the discovery of exculpatory evidence. "The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" *Bagley*, supra at 674. "Mere speculation that there may be exculpatory information is insufficient." *Hayes v. State*.[7] Nikitin has made no showing that evidence of Bykhovsky's identity was favorable and material. *Saunders v. State*.[8]

(b) *The INS Form.* At trial, Nikitina testified that Nikitin had filled out an INS form for her so that she could obtain a green card and stay in the United States. She also testified that Nikitin had told her that he had sent the form in, but that after his arrest, she found the INS application in the trunk of her car. The State emphasized this testimony to advance its argument that Nikitin manipulated and lied to Nikitina.

At the hearing on the motion for new trial, Nikitina acknowledged that she had not signed the INS form and knew that Nikitin could not send in the form until she had done so. She also acknowledged that her written response to a question on the INS form asking the applicant what she would do if she were required to return to Russia was, "I will hang myself." Nikitin argues that the State's failure to disclose this form to him deprived him of the opportunity of developing evidence that Nikitina had lied on the stand and fabricated the charges against him so that she could remain in the United States.

---

[4] *United States v. Agurs*, 427 U. S. 97, 107 (II) (96 SC 2392, 49 LE2d 342) (1976).

[5] *United States v. Bagley*, 473 U. S. 667, 676 (II) (105 SC 3375, 87 LE2d 481) (1985).

[6] *Strickler v. Greene*, 527 U. S. 263, 281-282 (II) (119 SC 1936, 144 LE2d 286) (1999).

[7] *Hayes v. State*, 182 Ga. App. 319, 320-321 (3) (355 SE2d 700) (1987).

[8] *Saunders v. State*, 195 Ga. App. 810, 811 (4) (395 SE2d 53) (1990).

The INS form might have been favorable evidence for Nikitin even though evidence of its existence and of Nikitina's not having signed it was testified to at trial. With respect to this evidence, Nikitin fails to satisfy the second prong of *Brady* that the evidence must have been suppressed by the State. Nikitin, as the person who filled out the form, obviously was aware of the form's existence and content and thus cannot complain that the State suppressed it. *Bertholf v. State*.[9]

(c) *Kalish's Erroneous Testimony*. As to the first *Brady* component, Nikitin's defense at trial was that his wife had fabricated the accusations against him because she did not want to return to Russia, and she felt that as a crime victim she would be able to stay in America. Evidence that the photograph was not, in fact, one that had been taken on the morning of the incident by Kalish adds nothing to the case, as Kalish clearly believed that it was a photo she had taken and accurately depicted what she had seen on the date of the incident.

Nikitin did not dispute the existence of the mark on Nikitina's neck, but simply said that it was made when he tried to wrest the shade cord from her grip during an argument. Further, Nikitin did not dispute that the photograph accurately reflected the condition of Nikitina on the morning of the incident. There is no evidence that the photographs actually taken by Kalish would have been helpful to Nikitin.

As to *Brady*'s second requirement that the evidence was suppressed by the State, either wilfully or inadvertently, it is clear that the State did not introduce the photograph taken by Kalish on the morning of the incident.

Though we find no wilful suppression of evidence on the part of the State, the fact that the prosecutor did not know that she was presenting erroneous evidence because the identity of the photographer had not been disclosed to her is not controlling. Any information obtained by State attorneys or by law enforcement officers in the course of their investigation must be attributed to the prosecutor for purposes of *Brady* violations. *Ross v. Hopper*.[10]

There is no evidence that the prosecutor in this case was aware that the testimony of Kalish was erroneous. Since the State is responsible for *Brady* purposes for such inaccuracies, the second prong of *Brady* is satisfied. See *Kyles v. Whitley*.[11]

The third component of the *Brady* analysis is whether Nikitin "has established the prejudice necessary to satisfy the 'materiality'

[9] *Bertholf v. State*, 224 Ga. App. 831, 832 (1) (482 SE2d 469) (1997).
[10] *Ross v. Hopper*, 716 F2d 1528, 1533-1534 (II) (B) (11th Cir. 1983).
[11] *Kyles v. Whitley*, 514 U. S. 419, 438 (III) (115 SC 1555, 131 LE2d 490) (1995).

inquiry." *Strickler*, supra at 282. The materiality component was discussed by the United States Supreme Court in *Bagley*, supra. As the *Kyles* Court explained:

> *Bagley*'s touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles*, supra at 434.

Even assuming that the introduction of the photograph was prejudicial to Nikitin, "[t]hat . . . is not the standard that petitioner must satisfy in order to obtain relief. He must convince us that 'there is a reasonable probability' that the result of the trial would have been different if the [fact that the photo was not the one taken by Kalish] had been disclosed to the defense." *Strickler*, supra at 289 (IV).

In this case, we must conclude that disclosure of the suppressed evidence to competent counsel would not have made a different result reasonably probable. Our conclusion is based on the fact that at trial, Kalish testified that the photograph introduced into evidence by the State was a fair and accurate depiction of the injury to Nikitina's neck which she had observed on the morning of the incident, which fact Nikitin does not dispute. This testimony would have supported Potopova's earlier testimony concerning a mark on Nikitina's neck. Thus, even if the State had not used the photograph as an exhibit, the jury would have been authorized to conclude that Nikitina's neck had been injured and that Nikitin had caused the injury.

Beyond that, upon any retrial, the State would be free to introduce the photograph actually taken by Kalish on the morning of the incident, which would also reflect the victim's condition at that time. Given Kalish's affirmation that the erroneous photograph reflected the victim's condition and Nikitin's failure to dispute that fact, the difference in photographs is not likely to affect the outcome.

2. Nikitin next complains that the State's withholding of the INS form and the identity of Bykhovsky prevented his counsel from rendering effective assistance at trial. In this case, after a hearing on the motion for new trial, the trial court determined that Nikitin had not been denied effective assistance of counsel. "We must affirm a trial court's finding that a defendant has not been denied effective assis-

.tance of counsel unless it is clearly erroneous." (Punctuation omitted.) *Bogan v. State*.[12]

"To prevail on a claim of ineffective assistance of counsel, [Nikitin] must prove both prongs of the test in *Strickland v. Washington*.[13] He must show both that counsel was deficient and that a reasonable probability exists that but for that deficiency the result of the trial would have been different." *Penny v. State*.[14] "A defendant's right to effective assistance of counsel does not guarantee errorless counsel or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance." (Punctuation and emphasis omitted.) *Richardson v. State*.[15]

Nikitin's claim that his trial counsel's performance was deficient stems, not from trial counsel's errors in mounting a defense, but from the State's failure to disclose all of the evidence in its file. Thus, at the time of trial, defense counsel was not even aware of the evidence suppressed by the State. Since we have determined that the State did not violate Nikitin's rights under *Brady* in failing to disclose Bykhovsky's identity and to provide him with the INS form, it follows that the trial court did not err in denying his motion for new trial on the ground that his trial counsel was ineffective for the same reasons. *Penny*, supra at 775.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED OCTOBER 10, 2002.

*Richard C. Wayne*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

---

[12] *Bogan v. State*, 249 Ga. App. 242, 244 (2) (547 SE2d 326) (2001).
[13] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).
[14] *Penny v. State*, 248 Ga. App. 772, 775 (2) (547 SE2d 367) (2001).
[15] *Richardson v. State*, 194 Ga. App. 358, 361 (1) (h) (390 SE2d 442) (1990).
[1] Jackson was acquitted of kidnapping and rape.