A04A0595. PINSON v. THE STATE.
A04A0596. SIGMON v. THE STATE.
(596 SE2d 734)

BLACKBURN, Presiding Judge.

In Case No. A04A0595, Brenda Pinson appeals her conviction by a jury of false imprisonment,[1] armed robbery,[2] burglary,[3] and possession of a firearm during the commission of a felony.[4] In Case No. A04A0596, co-defendant Gary B. Sigmon appeals his conviction of the same crimes. Both Pinson and Sigmon argue that the evidence was

---

[1] OCGA § 16-5-41.

[2] OCGA § 16-8-41.

[3] OCGA § 16-7-1.

[4] OCGA § 16-11-106.

insufficient to support their convictions and that the trial court erred in admitting similar transaction evidence. Pinson also maintains separately that her trial counsel was ineffective for failing to object to misconduct on the part of the State during closing argument, and that the trial court erred in denying her motion for new trial. Sigmon separately asserts that the trial court erred in: (1) admitting identification testimony and denying his motion to suppress; (2) admitting evidence of a photographic lineup; (3) denying his motion to sever; and, (4) failing to require the State to meet its discovery obligations. The cases are consolidated for appellate disposition in a single opinion. For the reasons set forth below, we affirm the decisions in both cases.

1. We address first the enumerations of error common in both appeals. Both Pinson and Sigmon maintain that the evidence was insufficient to support their respective convictions.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[5] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.

*Herring v. State.*[6]

Viewed in this light, the evidence shows that on the evening of April 11, 1999, Walter Pass, the 83-year-old victim, was visited by Cassie Hammond and Pinson. The women stayed for a short time and then left. About a half an hour later, Pinson came back to Pass's apartment, crying and claiming that Hammond had robbed her of $290. At first, Pass did not want to let Pinson into his apartment, but when she continued to cry, he let her enter. Pinson used the telephone and then left.

A short time later, Pinson returned once again to the apartment. Pass did not want to let her in, but again relented when she asked if

---

[5] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[6] *Herring v. State*, 263 Ga. App. 470 (1) (588 SE2d 286) (2003).

she could stay until her daughter arrived. When Pass opened the door to admit her, Pinson and Sigmon, who had been hiding so that he could not be seen through the peephole, entered his apartment. Pinson caught Pass by the hands and demanded his money. Sigmon, who was standing behind Pass, shoved a gun into Pass's side, telling him that he did not want to shoot him but would do so if he had to. Sigmon then marched Pass to the door of the bathroom, telling him to keep his eyes forward.

While Sigmon held him at gunpoint, Pinson removed Pass's ring and watch from his hands and took money from his pocket and change purse. She then went through the house, ransacking it room by room, taking a silver dollar, old coins, two rifles, food, and beer. Pinson and Sigmon then forced Pass into a closet in the kitchen, pushed a heavy table in front of the closet door, told Pass not to come out until after they were gone, and left.

The jury also heard testimony of a similar transaction involving Pinson and Sigmon. See Division 2, infra. The victim in the similar transaction identified both Pinson and Sigmon at trial. The evidence was sufficient to support the convictions on all charges of both Pinson and Sigmon.

2. Both Pinson and Sigmon argue that the trial court erred in admitting evidence of a similar transaction.

[B]efore any evidence of independent offenses or acts may be admitted into evidence, a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B). At that hearing, the state must make three affirmative showings as to each independent offense or act it seeks to introduce. The first of these affirmative showings is that the state seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility. The second affirmative showing is that there is sufficient evidence to establish that the accused committed the independent offense or act. The third is that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. After the 31.3 (B) hearing, and before any evidence concerning a particular independent offense or act may be introduced, the trial court must make a determination that each of these three showings has been satisfactorily made by the state as to that particular independent offense or act.

(Citation and footnote omitted.) *Williams v. State.*[7]

> On the question of similarity, the trial court's findings will not be disturbed unless clearly erroneous. In reviewing whether there were sufficient similarities to create a connection between the previous crime and the instant crimes such that the former tends to prove the latter, we focus on the similarities rather than the dissimilarities. Similar transactions need not be identical to the offense being tried but must show sufficient similarity or connection between the independent incidents and the offense at issue.

(Citations, punctuation and footnotes omitted.) *Susan v. State.*[8]

In deciding on the admissibility of the alleged similar transaction, the trial court held a hearing during which the State presented the testimony of Carl Battle. Battle testified that on the evening of April 14, 1999, he was walking in an area not far from Pass's apartment when he encountered Pinson, who stopped him and asked him for a cigarette. As he reached for his cigarettes, Pinson asked him what he was doing and he told her he was looking for drugs. When Battle pulled out his lighter, he also pulled out some money that he had in the same pocket. At this time, Sigmon, who had been hiding across the street, rushed over and pointed a gun at Battle. While Sigmon held Battle at gunpoint, Pinson went through Battle's pockets, taking money, the lighter, and the cigarettes.

Following this testimony, the trial court determined that the State sought to introduce the evidence for the appropriate purpose of showing common plan, scheme and bent of mind, and that Pinson and Sigmon committed the independent act. The trial court also found that there was sufficient connection or similarity between the independent offense and the crimes charged in this case such that proof of the former tended to prove the latter. We agree.

The evidence shows that the robberies of Pass and Battle were both committed at night, within a few days of each other, and in the same general area. In both instances, Pinson engaged the victim in conversation until Sigmon could emerge from hiding with a handgun. While Sigmon held the victims at gunpoint, Pinson went through their pockets, taking anything of value. Given these similarities, the ruling of the trial court was not clearly erroneous. *Susan v. State*, supra.

---

[7] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).
[8] *Susan v. State*, 254 Ga. App. 276, 282 (4) (562 SE2d 233) (2002).

Sigmon argues that the trial court failed to engage in a separate balancing test to determine whether the probative value of the evidence outweighed its prejudicial impact. Such an explicit finding is not required.

> [A] trial court's finding that "other transactions" evidence is relevant necessarily constitutes an implicit finding that the probative value of that evidence outweighs its prejudicial impact. Such evidence should be admitted and the prejudicial impact of that otherwise relevant evidence is a matter for jury instruction, and is not a factor in its admissibility vel non. The evidence was not overly prejudicial in this case, because the trial court gave detailed limiting instructions at the time of the admission of the evidence and at the close of the case.

*Farley v. State.*[9] This enumeration is without merit.

### Case No. A04A0595

3. Pinson raised four claims of ineffective assistance of counsel at a hearing on her motion for new trial, arguing that, although her trial counsel had objected to certain statements made by the State's attorney during closing argument, he had nonetheless rendered ineffective assistance by failing also to move for mistrial with respect to these statements. The trial court held that trial counsel had rendered effective assistance. "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous." (Citation and punctuation omitted.) *Beck v. State.*[10]

> There are two components to a claim for ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the defense was prejudiced by the deficient performance, i.e., there was a reasonable probability that the outcome of the trial would have been different but for counsel's deficient performance. Both components must be shown

---

[9] *Farley v. State*, 265 Ga. 622, 625 (2) (458 SE2d 643) (1995).
[10] *Beck v. State*, 263 Ga. App. 256, 257 (1) (587 SE2d 316) (2003).

before we can find that the conviction resulted from a break-down in the adversary process that renders the result unreliable. Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate.

(Citation and punctuation omitted.) *Leon v. State.*[11]

All of Pinson's claims of ineffective assistance stem from statements made by the State's attorney during closing argument to which Pinson's trial counsel objected but failed to move for mistrial. "As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion. This 'wide latitude' encompasses the prosecutor's ability to argue reasonable inferences raised by the evidence." (Citations and punctuation omitted.) *Cole v. State.*[12]

(a) The prosecuting attorney stated, during closing argument, that Pinson had testified at a bond hearing that she had gone with Hammond to Pass's home on the night of the crime, but then had denied doing so when she took the stand during trial. Pinson's counsel objected on the ground that this was a misstatement of the evidence. The trial court overruled the objection, finding that the prosecuting attorney was permitted to argue the evidence and reasonable inferences therefrom. We agree. The trial transcript reveals that the statement was a reasonable inference raised by the evidence. Pinson thus fails to satisfy either prong of the tests for a claim of ineffective assistance of counsel since trial counsel's failure to move for mistrial was not deficient performance and she has not shown that the outcome of the trial would have been different had trial counsel moved for a mistrial.

(b) The second claim of ineffective assistance is identified only as "a comment by the prosecutor on an allegation not presented during the evidence," and is unsupported by argument. "This enumeration is too vague and indefinite and presents nothing for review." *Martin v. State.*[13]

---

[11] *Leon v. State*, 237 Ga. App. 99, 105 (4) (513 SE2d 227) (1999).
[12] *Cole v. State*, 261 Ga. App. 809, 810 (2) (584 SE2d 37) (2003).
[13] *Martin v. State*, 223 Ga. 649, 653 (7) (157 SE2d 458) (1967).

(c) The third claim of ineffective assistance concerns the prosecuting attorney's reference to Pass's trial testimony. One of the items stolen from Pass was a silver dollar which his mother had given him in 1936. On the stand, Pass said, "And, you know, there were days I went hungry and wouldn't spend that dollar because that was something Mama had gave me." During closing, the State's attorney said, "No one should have to be reduced to begging for their own heirlooms and have a coin taken from them that they got in 1936 from their mother. Many a hungry day I went without spending that silver dollar to have these two come along and take it from him." Pinson's counsel objected on the ground that the prosecuting attorney was "asking the jury to feel sorry for Mr. Pass and the verdict cannot be based on sympathy." The trial court allowed the argument, but cautioned the prosecutor.

The prosecuting attorney's statement was, at least in part, a mere recital of Pass's own trial testimony. Assuming, for the sake of argument, that the statement was an appeal to the jury's sympathy for the victim, trial counsel's failure to move for a mistrial after the trial court allowed its admission was not deficient performance.

> As the trial court admitted such statements over the objection of trial counsel, his subsequent failure to move for a mistrial presumably was a matter of trial strategy. Further, defense counsel is unable to show that the outcome of the trial would have been different but for trial counsel's failure to move for a mistrial, i.e., that the trial court would have granted the motion.

*Leon v. State*, supra at 106 (4) (c).

(d) The fourth claim of ineffective assistance is based on "a statement by the prosecutor which appeared to attempt to shift the burden of proof to the defendants." The prosecutor's statement was in response to the closing argument of trial counsel for Pinson's co-defendant. Sigmon's attorney stated: "Ladies and gentlemen, there were people walking around that neighborhood with Mr. Pass'[s] items. You would think that the detective could take out a little time and go out there and see, hey, who sold you those items. You know, talk to witnesses. That's what investigation is all about." In his rebuttal closing, the prosecuting attorney asked, "What about these teenagers on the street selling these items? I submit to you that there are none." He went on to state, "If there were witnesses out there that said these two people didn't rob them, you would have heard from them." At this point, Pinson's trial counsel objected and the trial court, in response, stated: "The jury will be charged as you've been instructed in the

preliminary instructions that the burden of proof is on the State and there is no burden whatsoever upon the defendants."

> We do not believe [the prosecutor's] statement[s] improperly shifted the burden of proof by suggesting appellant had a duty to present witnesses. Nor did the statement[s] improperly comment upon appellant's Fifth Amendment right not to testify. The statement was permissible, as the prosecution may, in closing arguments, urge the jury to draw reasonable deductions from a defendant's failure to produce purportedly favorable witnesses.

*Miller v. State.*[14] Moreover, as we observed above, the failure to move for a mistrial after the trial court emphasized that the burden of proof was on the State presumably was a matter of trial strategy, and Pinson is also unable to show that the outcome of the trial would have been different but for her trial counsel's failure to move for a mistrial.

4. Pinson's final argument is that the trial court erred in denying her motion for new trial, based on the errors she has asserted above. For the reasons discussed in Divisions 1, 2, and 3, this argument lacks merit.

## Case No. A04A0596

5. Sigmon maintains that the trial court erred in admitting evidence of a pre-trial identification and denying his motion to suppress. We disagree.

> It is error to allow testimony concerning a pre-trial identification of the defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. A court need not consider whether there was a substantial likelihood of misidentification if it determines that the identification procedure was not impermissibly suggestive. An identification procedure is impermissibly suggestive when it leads the witness to an "all but inevitable identification" of the defendant as the perpetrator or . . . is the equivalent of the authorities telling the witness, "This is our suspect."

---

[14] *Miller v. State,* 275 Ga. 730, 739 (7) (571 SE2d 788) (2002).

(Citations omitted.) *Miller v. State.*[15]

The photographic lineup to which Sigmon objects was assembled by a police officer and printed off of a computer printer. The lineup had photographs of six black males, one of whom is Sigmon. Our examination of the lineups shows that the persons in the respective lineups were of similar physical appearance. Contrary to Sigmon's assertions, the lineup does not highlight him; his picture is not noticeably different from the other pictures, nor is his picture positioned differently. Further,

> there was no indication that the identification was not based solely upon the recognition of appellant by the victim during the actual robbery. Under the totality of the circumstances here we find no substantial likelihood of misidentification or that the procedure involved in the photographic display was impermissibly suggestive.

(Citations omitted.) *Daniel v. State.*[16]

6. Sigmon next argues that the trial court erred in admitting a photocopy of the original photographic lineup. Sigmon contends that admission of the copy violates the best evidence rule. We disagree.

The State introduced as an exhibit a copy of the original photographic lineup because the original was missing from the file. "The exhibit, although a copy of the original photographic lineup, was not subject to a best evidence rule objection because it was primary evidence of the fact to be proved, that the victim was shown a photographic display from which [he] identified [Sigmon's] picture as that of [the person committing the crimes against him]." *Jacobs v. State.*[17]

> These photocopies are attached to the record on appeal, and, as to all pictures, they are clear enough to be easily recognizable. From this set of pictures the jury, as well as this court, could easily satisfy themselves that the likeness of the defendant along with that of others composed a fair test of the witness' ability to identify the defendant. The objection was without merit.

*Montgomery v. State.*[18]

---

[15] *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999).

[16] *Daniel v. State*, 185 Ga. App. 228, 230 (2) (363 SE2d 634) (1987).

[17] (Citation omitted.) *Jacobs v. State*, 207 Ga. App. 714, 716 (2) (429 SE2d 256) (1993).

[18] *Montgomery v. State*, 154 Ga. App. 311 (268 SE2d 723) (1980).

7. Sigmon also asserts that the trial court erred in denying his motion to sever. We find no merit in this assertion.

> The grant or denial of a motion to sever is within the sound discretion of the trial court and the ruling thereon will not be disturbed unless there is an abuse of discretion. In exercising this discretion there are three elements which the trial court should consider, i.e., whether a joint trial will create confusion of evidence and law; whether there is danger that evidence implicating one defendant will be considered against another defendant despite cautionary instructions to the contrary; and whether the co-defendants will press antagonistic defenses. The defendant seeking severance must do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process.

(Citations and punctuation omitted.) *Blount v. State.*[19] None of these factors is present in this case. "There was no danger of confusion based on the number of defendants because there were only two. There was no evidence admissible against one defendant which was inadmissible against the other. And the defenses of the respective defendants were not antagonistic." *Redding v. State.*[20]

8. Finally, Sigmon contends that the trial court erred in failing to require the State to meet its discovery obligation to supply him with the address, date of birth, and telephone number of Cassie Hammond, and that, as a result, he was deprived of a fair trial under *Brady v. Maryland.*[21] This contention is meritless.

> In order to demonstrate a *Brady* violation, [Sigmon] had to show that: (1) the State possessed information favorable to [Sigmon]; (2) [Sigmon] did not possess the evidence nor could [he] obtain it with due diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed.

*Wilson v. State.*[22]

A defendant must satisfy each prong of the *Brady* analysis to establish a violation of his rights, but nothing in the record indicates

---

[19] *Blount v. State*, 181 Ga. App. 330, 336 (5) (352 SE2d 220) (1986).

[20] *Redding v. State*, 239 Ga. App. 718, 721 (4) (521 SE2d 840) (1999).

[21] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[22] *Wilson v. State*, 277 Ga. 114, 118 (3) (587 SE2d 9) (2003).

that Sigmon can satisfy even one prong of this analysis. As to the first prong, Sigmon's argument fails for two reasons. First, there is no evidence in the record that the State ever had the information to which Sigmon claims he was entitled. Second, there is no evidence that this information would have been favorable to Sigmon. In his brief, Sigmon states only that the requested information "could have led to exculpatory evidence." "The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment. Mere speculation that there may be exculpatory information is insufficient." (Citation and punctuation omitted.) *Nikitin v. State.*[23]

As to the second prong, Sigmon, whose co-defendant was an acquaintance of Hammond, has made no showing that he did not possess, or could not obtain with due diligence, Hammond's phone number, address, and date of birth. Third, since the record does not indicate that the State possessed the information Sigmon seeks, it follows that there is no evidence that the State suppressed the evidence. Finally, since, as we have pointed out above, it is mere speculation to assume that the information could lead to exculpatory evidence, there can be no showing that a reasonable possibility exists that the outcome of the trial would have been different had the information been disclosed.

*Judgments affirmed. Barnes and Mikell, JJ., concur.*

DECIDED MARCH 12, 2004.

*Carla J. Friend*, for appellant (case no. A04A0595).
*Debra B. Brewer*, for appellant (case no. A04A0596).
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.

---

[23] *Nikitin v. State*, 257 Ga. App. 852, 854 (1) (a) (572 SE2d 377) (2002).