**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**December 18, 2014**

# In the Court of Appeals of Georgia

A14A1864. BURTON v. THE STATE.

ANDREWS, Presiding Judge.

Following a jury trial, Samuel Burton was convicted on three counts of criminal damage to property in the first degree. He appeals following the denial of his motion for new trial, arguing that the trial court erred in denying his motions for a mistrial based on the State's discovery violations. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict, *Maloney v. State*, 317 Ga. App. 460 (731 SE2d 133) (2012), the evidence at trial showed that while Jerry Roberts was driving home from work in the early evening on Richmond Hill Road on February 18, 2011, a young man on the side of the road threw a brick at his 2004 Toyota 4 Runner and struck the vehicle, breaking the windshield on the passenger

side and tearing the antenna. The impact of the brick caused Roberts to swerve and nearly strike an oncoming vehicle. Roberts turned around to follow the young man and called 911. As he followed the young man, Roberts saw him jump up and hit a crosswalk sign and then kick a large trash can into the road in front of an SUV. Roberts also saw the man yell at the occupants of a car as the car turned into a fire station. At trial, Roberts identified Burton as the man who had thrown a brick at his car.

On the same day, Toi Jackson was driving her 1999 Pontiac Grand Am on Richmond Hill Road with her 11-year-old daughter in the passenger seat when a young man threw a large brick or rock at her car, shattering the windshield on the passenger side. When the object hit her car, Jackson swerved to the other side of the road, but there was no oncoming traffic. Jackson turned around, drove up beside the man, and asked him why he threw the rock. Jackson testified that the man "just went ballistic" and started cursing and picking things up from the ground. Jackson called 911 and drove to a nearby fire station where she thought she would be safe. At trial, Jackson and her daughter identified Burton as the man who had thrown an object at Jackson's car.

Alice Foote was driving on Richmond Hill Road in her 2002 Toyota Echo on the date in question with her sister in the passenger seat of the car when a man wearing a yellow hooded jacket threw a rock at her vehicle and hit the windshield support, almost causing Foote to have an accident. Foote drove to a convenience store to call the police.

Deputy James Ouzts of the Richmond County Sheriff's Office responded to Foote's call. He met Foote, and she provided a description of the suspect as a black male, approximately five feet, eight inches tall and 160 to 170 pounds, wearing a yellowish or tan jacket and headphones. Deputy Ouzts instructed Foote to wait at the store while he attempted to locate the suspect. After leaving Foote, Deputy Ouzts received two more calls regarding incidents similar to the one Foote reported. Deputy Ouzts then encountered Burton in the road in front of Fire Station No. 6 holding pieces of broken concrete. Burton matched the description of the suspect, and Deputy Ouzts ordered him to the ground and took him into custody. Deputy Ouzts asked another deputy to summon Foote and her sister to the fire station. Foote and her sister testified that the person in custody in a police vehicle at the fire station was wearing the same clothing as the person who threw a rock at Foote's vehicle. Burton testified at trial and denied throwing objects at cars.

The record reflects that on direct examination, Foote testified that she gave a written statement once she arrived at the fire station. Similarly, Foote's sister stated that she gave a statement at the fire station. During his subsequent cross-examination of Deputy Ouzts, Burton's counsel asked him if he took any handwritten statements from witnesses, and Deputy Ouzts responded: "I believe there [were] two statements that were written and Ms. Foote, her passenger, I believe, filled out a statement." Deputy Ouzts stated that the statements should be with the report turned in to records but that he did not have them with him at trial. When asked if he had access to the statements, Deputy Ouzts responded that he could probably locate them. On redirect, Deputy Ouzts stated that the copy of the incident report turned over to the district attorney's office did not include any witness statements. The State then recalled Roberts, and on recross, Roberts stated that he gave a written statement to police in which he described the individual who threw a brick at his car. According to Roberts, he described the suspect as a black male wearing a yellowish hoodie and jeans who was about five feet eight inches tall and weighed approximately 150 to 160 pounds.

After Roberts testified the second time, the State rested its case, and Burton then moved for a mistrial based on the State's failure to provide written witness statements. A 30-minute recess was taken to see if Deputy Ouzts would be able to get

4

the statements from the records division at the sheriff's office; however, both the records division and criminal investigation division informed Deputy Ouzts that they did not have the statements. Burton's counsel renewed his motion for a mistrial, and the trial court denied the motion.

During the charge conference, which occurred before Burton testified, the prosecutor informed the trial court that the State might impeach Burton's testimony with statements Burton made in custody before he was read his *Miranda* warnings. According to the prosecutor, Deputy Ouzts asked Burton why he was throwing rocks at cars, and Burton replied that they were throwing rocks at me first. Burton's counsel again moved for a mistrial on the ground that the defense did not receive any notice of custodial statements the State intended to use at trial. The trial court denied the motion.

Burton argues on appeal that the trial court abused its discretion in denying his motions for mistrial.[1] For the reasons explained below, we disagree.

*Failure to produce witness statements*. It appears from the record that as many as three witnesses gave written statements to Deputy Ouzts. Such statements were,

---

[1] Burton served the State with a timely notice of his election to proceed under the reciprocal discovery provisions of OCGA § 17-16-1 et seq.

5

at least at some point, in the "possession, custody, or control" of the State or prosecution, see OCGA § 17-16-1 (1), and subject to production under OCGA § 17-16-7 ten days prior to trial. The availability of remedies for the State's failure to comply with its discovery obligations is governed by OCGA § 17-16-6, which states:

> If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

OCGA § 17-16-6 authorizes a trial court to grant a defendant's motion for a mistrial based on a discovery violation "upon a showing . . . of both bad faith and prejudice or that a mistrial would otherwise be just under the circumstances." *Prince v. State*, 295 Ga. 788, 2014 LEXIS 754 at 794 (2014). The trial court's ruling regarding a remedy for the State's failure to comply with its discovery obligations, including the trial court's decision on whether to grant a mistrial, is subject to review for an abuse of discretion. See *Tubbs v. State*, 276 Ga. 751, 753-754 (3) (583 SE2d 853) (2003).

6

Here, the trial court denied the motion for mistrial after first determining that the witness statements at issue were unavailable. The record contains no evidence that the statements were lost or misplaced due to bad faith on the State's part. Nor did Burton establish prejudice resulting from the State's failure to disclose the statements. Because the statements could not be located, the State could not use them to support its case against Burton. In addition, any argument that the statements might have aided Burton's defense or provided a basis to impeach the State's witnesses is simply speculative, and Burton's counsel was able to use the statements' absence to attempt to undermine Deputy Ouzts' credibility at trial. We do not otherwise perceive how granting a mistrial would be just under the circumstances, especially since there is no evidence in the record that the statements might yet be found and thus potentially alter Burton's strategy in a new trial. As Burton failed to establish bad faith, prejudice, or any "other imperative to grant a mistrial," *Prince v. State*, supra, 2014 LEXIS 754 at 794, the trial court did not abuse its discretion in denying his motion for mistrial based on the failure to disclose witness statements. See *Blankenship v. State*, 229 Ga. App. 793, 794 (494 SE2d 758) (1997) (OCGA § 17-16-6 cloaks trial court with discretion to use judgment to ensure fair trial).

7

*Failure to disclose Burton's custodial statement*. Under OCGA § 17-16-4 (a) (1), the State must disclose within ten days prior to trial "the substance of any . . . relevant oral statement made by the defendant, before or after arrest, in response to interrogation by any person then known by the defendant to be a law enforcement officer," if the State intends to use the statement at trial. As the State did not attempt to impeach Burton with the statement that was first disclosed during the charge conference, Burton cannot establish that he was harmed by the State's belated disclosure of the statement. See *Bertholf v. State*, 224 Ga. App. 831 (482 SE2d 469) (1997) (defendant not harmed by any violation of OCGA § 17-16-4 resulting from State's failure to provide defense with copy of audiotape of defendant's confession because audiotape was not introduced into evidence). Under the circumstances, we discern no abuse of discretion in the denial of Burton's motion for mistrial based on the State's untimely disclosure of Burton's custodial statement.

*Judgment affirmed. McFadden and Ray, JJ., concur.*