**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 12, 2015**

# In the Court of Appeals of Georgia

A15A0456, A15A0457. THE STATE v. BROWN, et al.

ELLINGTON, Presiding Judge.

The Superior Court of Fulton County entered directed verdicts of acquittal in favor of Javaris Brown, Meyetta King, and Kevin Rouse on charges of trafficking in cocaine, OCGA § 16-13-31 (a) (1) (A); possession of marijuana with intent to distribute, OCGA § 16-13-30 (j) (1); and other violations of the Georgia Controlled Substances Act. In Case No. A15A0457, the State appeals, contending, inter alia, that the judgments must be vacated as having been entered when jurisdiction lay in this Court and not in the trial court. In addition, in Case No. A15A0456, the State appeals from two interlocutory rulings, contending that the trial court abused its discretion in granting the defendants' motions to exclude certain evidence as a sanction for

discovery violations and in granting the defendants' motions to exclude evidence of other, uncharged crimes. For the reasons explained below, we vacate the judgments of acquittal and reverse in part the evidentiary rulings.

*Case No. A15A0457*

1. The trial court directed verdicts of acquittal on all counts. As a threshold matter, therefore, we must determine whether the State has any right to appeal. Ordinarily, the State

> may not appeal a trial court's grant to a criminal defendant of a directed verdict of acquittal based on an insufficiency of the evidence to support a conviction, in that a new trial would be barred by the double jeopardy clause of the Fifth Amendment. The government cannot appeal such a directed verdict of acquittal, even if it is erroneously granted.

(Citations omitted.) *State v. Williams*, 246 Ga. 788-789 (1) (272 SE2d 725) (1980).[1]

In this regard, the State contends that, when the trial court called the case for trial, it

---

[1] See *Tolbert v. Toole*, _ Ga. _ (767 SE2d 24) (2014); *State v. Vansant*, 208 Ga. App. 772, 776 (2) (431 SE2d 708) (1993), reversed in part on other grounds, *Vansant v. State*, 264 Ga. 319 (443 SE2d 474) (1994); *State v. Fly*, 193 Ga. App. 190, 191 (2) (387 SE2d 347) (1989); *State v. Warren*, 133 Ga. App. 793, 795-796 (213 SE2d 53) (1975). See also *State v. Caffee*, 291 Ga. 31, 33 (2) (728 SE2d 171) (2012) ("The State does not have the right to appeal decisions in criminal cases unless there is a specific statutory provision granting the right.") (citation omitted).

lacked the authority to do so. Specifically, the State contends that it was authorized pursuant to OCGA § 5-7-1 (a) (5) to appeal from certain evidentiary rulings entered by the trial court a few days before the scheduled trial, that it filed a notice of appeal that was sufficient to divest the trial court of jurisdiction of the case and invest this Court with jurisdiction (Case No. A15A0456), and that the trial court will be reinvested with jurisdiction only after this Court disposes of the pending appeal, when we issue a remittitur and the same is filed in the trial court. Because the trial court lacked jurisdiction when it called the instant case for trial, the State contends, the judgments of acquittal must be vacated.

The record shows the following proceedings. The defendants were arrested and indicted in April 2014. On July 3, 2014, the State filed pursuant to OCGA § 24-4-404 (b) notice of intent to introduce evidence of other acts of Brown and Rouse.[2] On August 4, 2014, Brown filed a motion to suppress evidence seized pursuant to a search warrant executed on April 23, 2014. On August 18, 2014, Rouse filed a motion to suppress evidence seized on April 23, 2014, when he was detained outside the searched premises.[3]

---

[2] See Division 3, infra.

[3] See Division 2, infra.

The trial court conducted a hearing on the evidentiary issues on August 7, September 9, and September 10, 2014. On September 11, 2014, the trial judge signed an order excluding certain evidence as a sanction for discovery violations and excluding the other-acts evidence, and the clerk of court stamped the order "filed" on September 12, 2014. The court placed the case on a trial calendar for September 17, 2014.

On September 12, 2014, the State filed a notice of appeal in the trial court pursuant to OCGA § 5-7-1 (a) (5). That Code section provides that in criminal cases the State may appeal "[f]rom an order, decision, or judgment excluding any . . . evidence to be used by the state at trial on any motion filed by the state or defendant at least 30 days prior to trial and ruled on prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first[.]" To take such an appeal, the State must file "the notice of appeal . . . within two days of such order, decision, or judgment[,]" and the prosecuting attorney must "certif[y] to the trial court that such appeal is not taken for purpose of delay and that the evidence is a substantial proof of a material fact in the proceeding[.]" Id. On September 12, 2014, the State also filed a separate "Certificate of Purpose" in which the prosecuting attorney stated, "I hereby certify that the State's appeal of this Court's order excluding evidence as a sanction

4

for discovery violations and excluding OCGA § 24-4-404 (b) evidence is not taken for purpose of delay, and the evidence is a substantial proof of a material fact in the proceedings."

The trial court called the case for trial on September 17, 2014. The State notified the court that it had filed a notice of appeal from the September 12, 2014 rulings and argued that its notice of appeal had divested the trial court of jurisdiction to try the case. The defendants disputed this, arguing that the State failed to comply with the procedural requirements of OCGA § 5-7-1 (a) (5) (B). Specifically, they argued that the Statute requires the State to serve *the trial judge* directly with the required certification, that is, the State's filing of its Certificate of Purpose in the office of the clerk of the trial court was insufficient to certify to the trial court that such appeal was not taken for purpose of delay and that the excluded evidence was substantial proof of a material fact. They also argued that the State's appeal was in fact for purpose of delay. They argued that, given the abuse of discretion standard of review that would be applied by this Court, the State could not prevail on appeal. The prosecuting attorney reiterated that the appeal was not taken for purpose of delay and stated that it was necessary to appeal the court's evidentiary rulings because, without the excluded evidence, the State could not carry its burden of proof at trial. The trial

5

court found that, although "[t]he State filed a document purporting to be . . . [the] certification" required by OCGA § 5-7-1 (a) (5), the State did not provide it "to the trial court" as required. The trial court also found that the State's purpose in appealing was delay. The trial court ruled that the State's appeal was invalid and that the court would proceed with the trial.

The defendants all announced ready for trial. The State declined to participate, on the basis that the pending appeal divested the trial court of jurisdiction. The trial court then impaneled a jury. The State having failed to adduce any evidence, the defendants each moved for a directed verdict, and the trial court entered a directed verdict of acquittal as to each defendant.

If, contrary to the trial court's ruling, the State's September 12, 2014 notice of appeal was effective under OCGA § 5-7-1 (a) (5), then that notice of appeal deprived the trial court of jurisdiction to try the defendants until the State's appeal was resolved and the trial court received the remittitur from this Court. *Chambers v. State*, 262 Ga. 200, 201-202 (1), (2), (3) (415 SE2d 643) (1992) (holding that the State's appeal of an order suppressing evidence deprived the trial court of jurisdiction to try the accused and any proceeding so conducted in the trial court was coram non judice and vacating the resulting judgment and that the return of the remittitur reinvests the

6

trial court with jurisdiction).[4] Although a notice of appeal must be filed in the trial court, the appellate court "alone has the authority to determine whether such filing is sufficient to invoke its jurisdiction." (Citation and punctuation omitted.) *Hughes v. Sikes*, 273 Ga. 804, 805 (1) (546 SE2d 518) (2001). Thus, we owe no deference to the trial court's analysis of whether the State's notice of appeal from the court's evidentiary rulings was effective.

In this case, it is undisputed that the State filed its notice of appeal from the trial court's evidentiary ruling within two days after the ruling was entered, that is, the date a written judgment was received and stamped "filed" by the clerk of the trial court. See OCGA § 5-6-31 ("The filing with the clerk of a judgment, signed by the judge, constitutes the entry of a judgment within the meaning of [the Appellate Practice Act]."); *In the Interest of K. D.*, 272 Ga. App. 803, 805 (613 SE2d 239) (2005); *Brown v. Webb*, 224 Ga. App. 856, 857 (482 SE2d 382) (1997).[5] Further, it is undisputed that the State filed with the clerk of the trial court a certification

---

[4] See also *Styles v. State*, 245 Ga. App. 90, 92 (537 SE2d 377) (2000) (Blackburn, P.J., specially concurring) (explaining that the supersedeas resulting from an appeal in a criminal case applies to all "proceedings which either require a ruling on the matters on appeal or directly or indirectly affect such matters").

[5] See also Christopher J. McFadden et al., *Ga. Appellate Practice*, § 10.3 (updated November 2014).

executed by the prosecuting attorney, who is an officer of the court, that the appeal was not taken for purpose of delay and that the evidence excluded in the appealed rulings was material. We conclude that this was sufficient to invoke the jurisdiction of this Court.[6] We find no basis for concluding that the prosecuting attorney's certification of purpose and necessity "to the trial court" can only be satisfied by personally serving the judge presiding over a case.[7] When the General Assembly has intended that certain communications be made personally to a judge – as compared to matters that are to be submitted to a trial court as a governmental entity and made part of the official court records by filing in the office of the clerk of court – it has so provided.[8] Moreover, it is undisputed that, before the trial judge moved forward with

---

[6] See OCGA § 5-7-2 (b) (1) (A certificate of immediate review shall not be required to appeal from an order suppressing or excluding evidence under OCGA § 5-7-1 (a) (5).).

[7] See OCGA § 5-7-6 ("This chapter[, that is, OCGA §§ 5-7-1 through 5-7-6,] shall be liberally construed to effectuate the purposes stated in this chapter.").

[8] See OCGA §§ 17-7-170 ("[A] demand for speedy trial shall be filed with the clerk of court and served upon the prosecutor and upon the judge to whom the case is assigned or, if the case is not assigned, upon the chief judge of the court in which the case is pending."); 44-14-161 (a) ("When any real estate is sold on [nonjudicial] foreclosure. . . , no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and

impaneling a jury in this case, the prosecuting attorney personally informed the judge of the pending appeal, on the record and in open court. There is no issue of any lack of actual notice. Finally, even if this Court were inclined to question the prosecuting attorney's representation that the State did not file its appeal from the trial court's evidentiary rulings for purpose of delay, we find no support in the record for finding that delay *was* the State's purpose, especially in light of the fact that the trial court's pretrial rulings excluded virtually all of the inculpatory evidence that the State planned to offer[9] and effectively doomed the entire prosecution.

For the foregoing reasons, we conclude that the State's pretrial notice of appeal was effective and deprived the trial court of jurisdiction to try the defendants pending resolution of the appeal. *State v. Vansant*, 208 Ga. App. at 776 (2), affirmed in relevant part, *Vansant v. State*, 264 Ga. at 319 (3). Because the trial court lacked jurisdiction to proceed with a trial of the defendants, such proceedings were without

approval thereon."). See also Uniform Superior Court Rules 16.1 (A notice of an attorney's leave of absence shall be submitted to the clerk of the court and, in addition, "[a] copy of the notice shall be sent, contemporaneously, to the judge before whom an action is pending and all opposing counsel."); 17.1 (B) (A written notice of an attorney's conflict shall be given "to opposing counsel, to the clerk of each court and to the judge before whom each action is set for hearing (or, to an appropriate judge if there has been no designation of a presiding judge).").

[9] See Divisions 2 and 3, infra.

legal effect and the directed verdicts of acquittal are void. *Chambers v. State*, 262 Ga. at 201-202 (2). The final order of acquittal of all defendants is hereby vacated, and we turn to the underlying appeal.

*Case No. A15A0456*

2. The State contends that the trial court abused its discretion in granting the defendants' motion to exclude certain evidence, which was seized when investigators executed a search warrant, based on the court's finding that the State violated its reciprocal discovery obligations.

When a criminal defendant elects to engage in reciprocal discovery under Georgia's Criminal Procedure Discovery Act, the State and the defendant are required to produce certain types of evidence and information. See OCGA § 17-16-1 et seq. If it comes to the attention of the trial court that either the State or the defendant has failed to comply with the requirements of the Act, the court has wide latitude in fashioning a remedy for such violation. OCGA § 17-6-6; *Wilkins v. State*, 291 Ga. 483, 486-487 (5) (731 SE2d 346) (2012); *Leger v. State*, 291 Ga. 584, 588 (2) (b) (732 SE2d 53) (2012); *Jones v. State*, 290 Ga. 576, 577-578 (2) (722 SE2d 853) (2012). As we have noted, this broad discretion allows such remedy as is warranted "to ensure a fair trial." (Citation omitted.) *Blankenship v. State*, 229 Ga. App. 793,

10

794 (494 SE2d 758) (1997). See *Burton v. State*, - Ga. App. - (Case No. A14A1864, decided December 18, 2014) (accord). For example, when the State violates the Act by failing to timely identify a witness, "[i]t is usually a sufficient remedy for the defense to be afforded an opportunity to interview the witness." (Citation and punctuation omitted.) *Leger v. State*, 291 Ga. at 588 (2) (b). Although the Act authorizes a trial court to prohibit the State from introducing evidence that it failed to disclose as required, "[e]xclusion of evidence is a particularly harsh sanction and should be imposed only where there is a showing of prejudice to the defendant and bad faith by the State." (Citation and punctuation omitted.) Id. at 586 (2). "[T]he remedy a trial court fashions to cure a discovery violation is reviewed on appeal only for abuse of discretion." (Citation omitted.) *Jones v. State*, 290 Ga. at 578 (2).

The record shows the following. In early 2014, the Atlanta Police Department received information that illegal drugs were being sold out of 1808 Brewer Boulevard, a single-family house. An investigator arranged for a confidential source to buy cocaine and marijuana there, on April 7 and April 16. After the second controlled buy, the investigator obtained a search warrant for the premises. A team executed the search warrant on April 23, 2014. When the team arrived, Rouse was beside his car in the driveway, and Brown and King were inside the house. Brown

11

jumped out of a window and was immediately captured. Officers found a total of over 50 grams of cocaine, 9.72 grams of marijuana, and three scales in the kitchen and 10.27 grams of cocaine in one of the bedrooms. Officers arrested Brown and King. In a search incident to that arrest, officers found 11.51 grams of a Schedule 1 controlled substance[10] in Brown's sock. King told officers that Rouse had been selling drugs from the house. Officers then searched Rouse and seized a large quantity of cash that he had in his pocket and 16.81 grams of heroin that was concealed in his underwear.

In their motions to suppress all evidence seized as a result of the search, the defendants argued that the issuance of the search warrant was not supported by probable cause, that they were merely present in the house at the execution of the warrant, and that there was not probable cause to arrest them. Before the hearing on the motions to suppress, the State represented to the trial court that it had provided discovery to the defendants. At the motions hearing on August 7, 2014, the State advised the court that investigators had recorded the execution of the search warrant, but the State had not produced the recording to the defendants. The court suspended

---

[10] See OCGA § 16-13-25 (3) (DDD) (ethylone).

12

the hearing to allow the State to make a supplemental discovery response and to allow the defendants an opportunity to review the recording.

The hearing resumed on September 9, 2014. During the State's direct examination of the investigator who obtained the search warrant, the prosecutor asked whether the investigator had conducted surveillance on 1808 Brewer Boulevard before arranging for controlled purchases by her confidential source. The investigator replied that she had gone to the house twice in the weeks before the controlled buys. She saw some people going in and out of the house but could not determine what they were doing there. When asked whether she included information about the surveillance in her affidavit in support of her application for a warrant, the investigator responded, "I think I just have it in my . . . personal notes," but testified that she had discussed the surveillance with the magistrate who handled the warrant application. Defense counsel cross-examined the investigator about her surveillance and whether she had written down information about the surveillance and turned it over to the State. The investigator responded that she had written it down but had not turned it over to the State. At this point, the trial court asked where the investigator "maintain[ed] a log about the surveillance[,]" and the investigator replied, "on the computer. We just type our own notes." The trial court asked whether defense counsel

13

wanted "time with [those] notes" before proceeding with the hearing and, when they said they did, suspended the hearing to allow the State to "get the notes off the computer" and produce them to the defendants.

When the hearing reconvened the following day, the prosecuting attorney reported that the investigator had searched her computer and her files and had prepared a narrative summary of everything she could remember about the surveillance. The investigator testified that she had used the wrong terminology in referring to a "log" or "personal notes" and that the only thing that she had typed on the computer was her investigative summary, which she created and then added to as her investigation progressed. She had provided that document to the State, and the prosecuting attorney had previously produced it to the defendants. According to the investigator, the only notes that she had ever created in connection with the case that she had not provided to the State were handwritten on scraps of paper and were limited to a description of the house and "what [she] saw that day," which was information she needed to include in her warrant application and affidavit. After she had transcribed this information verbatim into her warrant application, the investigator had discarded those scraps of paper; they were not part of the State's discovery production.

The trial court stated to the prosecuting attorney, "the State is responsible for everything that law enforcement has. So it is the State's obligation to get it, determine whether it is discoverable, determine whether it is Brady material, and produce it. . . . When law enforcement has [information], the State has it."[11] The trial court then instructed the investigator "for future reference," that

> when a case gets indicted . . . everything counts[.] Your scrap notes, your personal notes, everything associated with that case . . . is subject to discovery[.] And[,] when you don't produce it, it puts everyone, including the State, because they're responsible for producing it, in a position where folks start [wondering], ["]well, what are they hiding . . . , what got covered up, what else don't we know[?"] . . . It puts me in a position where I have to decide whether there's been intentional misconduct[.] And if there's been intentional misconduct, [evidence] gets thrown out[,] because the Constitution pretty much says that's what happens when there's intentional misconduct[:] it gets held against the State. So when you testify under oath there are notes on the computer and then[,] the next day, there are no notes on the computer, that's a problem.

The court found that "the failure to preserve notes pertinent to the case . . . raise[d] an issue of spoliation." Taking this together with the delayed production of the

---

[11] See *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1962).

15

recording of the execution of the search, the trial court found a "pattern of failure [of the State] to provide full discovery." The court found that this pattern of behavior was "grossly unfair" and "violate[d] these folks' rights." On this basis, the trial court granted the motions to suppress everything seized in executing the search warrant. The trial court expressly found, however, that the warrant was supported by probable cause and was properly executed and ruled that the suppression was "for reasons independent of the validity of the warrant itself."

Although, as posited by the trial court, when law enforcement has information, the State is deemed to have it for purposes of the reciprocal discovery Act,[12] this does not mean, as the trial court went on to conclude, that "everything associated with [a] case . . . is subject to discovery." The Act specifies materials that must be produced, including statements attributable to the defendant;[13] pictures, documents, and tangible evidence "intended for use by the prosecuting attorney as evidence" at trial;[14] results

---

[12] See OCGA § 17-16-1 (a) ("'Possession, custody, or control of the state or prosecution' means an item which is within the possession, custody, or control of the prosecuting attorney or any law enforcement agency involved in the investigation of the case being prosecuted.").

[13] OCGA § 17-16-4 (a) (1).

[14] OCGA § 17-16-4 (a) (3).

16

or reports of physical or mental examinations and of scientific tests or experiments, again, if intended for use by the prosecuting attorney at trial;[15] and any statement of any witness that the prosecuting attorney intends to call as a witness at trial and that relates to the subject matter of the witness's testimony.[16] See *White v. State*, 271 Ga. 130 (518 SE2d 113) (1999). The purpose of the Act is to promote fairness and efficiency in criminal proceedings and to prevent so-called "trial by ambush."[17] We find no basis for concluding that the Act requires every member of law enforcement to preserve "everything associated with [every] case," including informal notes created by an investigator only for the purpose of helping the investigator include

---

[15] OCGA § 17-16-4 (a) (4).

[16] OCGA § 17-16-7.

[17] *State v. Dickerson*, 273 Ga. 408, 410 (1) (542 SE2d 487) (2001) ("The purpose of the Act is to establish a closely symmetrical scheme of discovery in criminal cases that maximizes the presentation of reliable evidence, minimizes the risk that a judgment will be predicated on incomplete or misleading evidence, and fosters fairness and efficiency in criminal proceedings.") (citation and punctuation omitted); *White v. State*, 271 Ga. at 130 ("The purpose of the act is to prevent surprise and trial by ambush[.]") (footnote omitted). See also *Jones v. State*, 276 Ga. 171, 174-175 (575 SE2d 456) (2003) ("Contrary to the view of some, our legal system is not simply an elaborate game of 'Gotcha!' This Court does not endorse acquittal by ambush on the part of a defendant any more than it does trial by ambush on the part of the State. Nor do we condone induced error. The object of all legal investigation is the truth, and procedural rules are in place to further such goal in an orderly fashion.") (citation and punctuation omitted).

17

accurate information in a warrant application.[18] The record does not show that the investigator's informal notes, which the State could not produce, were subject to discovery under any of the provisions of the Act.[19] We conclude, therefore, that the trial court abused its discretion in imposing the extreme sanction of evidence exclusion for the State's failure to produce the investigator's notes.

3. The State contends that the trial court erred in ruling that the State's intended evidence of other crimes was not relevant for a proper purpose and abused its discretion in granting the defendants' motion to exclude the evidence on that basis.

---

[18] Cf. OCGA §§ 17-5-55 (retention of property that is introduced into evidence during the pendency of a criminal case); 17-5-56 (a) (preservation of physical evidence collected at the time of a crime that contains biological material relating to the identity of the perpetrator of the crime).

[19] To the extent the appellees suggest that the notes may have been exculpatory, they have not articulated how the investigator's description of the activity she observed during her surveillance could have been exculpatory. A finding of a *Brady* violation, that is, that the State failed to disclose evidence that is both favorable to the accused and material either to guilt or to punishment, *Brady v. Maryland*, 373 U. S. at 87, cannot be based on mere speculation. *Williams v. State*, 251 Ga. 749, 789 (7) (312 SE2d 40) (1983); *Jones v. State*, 276 Ga. App. 728, 730-731 (624 SE2d 275) (2005); *Pinson v. State*, 266 Ga. App. 254, 263-264 (8) (596 SE2d 734) (2004); *Nikitin v. State*, 257 Ga. App. 852, 854 (1) (a) (572 SE2d 377) (2002); *Merritt v. State*, 248 Ga. App. 709, 713-714 (3) (548 SE2d 427) (2001).

Georgia's new Evidence Code governs this contention.[20] OCGA § 24-4-404 (b) of the new Code provides:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Moreover, under OCGA § 24-4-403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Both of these provisions track their federal counterparts, Rules 403 and 404 (b) of the Federal Rules of Evidence. See *Bradshaw v. State*, - Ga. - (3) (Case No. S14A1365, decided March 2, 2015).[21] Like the Eleventh Circuit Court of Appeals, Georgia's courts apply a

---

[20] See Ga. L. 2011, p. 99, §§ 2, 101 (Georgia's new Evidence Code, OCGA § 24-1-1 et seq., applies to any motion, hearing or trial commenced on or after January 1, 2013.).

[21] Our new Evidence Code was based in large part on the Federal Rules of Evidence. And where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance. Thus, the uncodified first section

19

three-part test to determine admissibility of evidence of other crimes and acts under Rule 404 (b): "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act." (Citation, punctuation, and footnote omitted.) *Bradshaw v. State*, - Ga. at - (3).[22] A trial court's decision to admit or exclude

<blockquote>
of the statute enacting the new Evidence Code explains: It is the intent of the General Assembly in enacting this Act to adopt the Federal Rules of Evidence, as interpreted by the Supreme Court of the United States and the United States circuit courts of appeal as of January 1, 2013, to the extent that such interpretation is consistent with the Constitution of Georgia. Where conflicts were found to exist among the decisions of the various circuit courts of appeal interpreting the federal rules of evidence, the General Assembly considered the decisions of the 11th Circuit Court of Appeals. It is the intent of the General Assembly to revise, modernize, and reenact the general laws of this state relating to evidence while adopting, in large measure, the Federal Rules of Evidence.
</blockquote>

(Citations and punctuation omitted.) *Parker v. State*, - Ga. - (3) (Case No. S14G1005, decided February 16, 2015).

[22] See *Chynoweth v. State*, - Ga. App. - (3) (768 SE2d 536) (2015) (accord); *Curry v. State*, 330 Ga. App. 610 (1) (768 SE2d 791) (2015) (accord); *Jones v. State*, 326 Ga. App. 658, 660 (1) (757 SE2d 261) (2014), cert. granted, (accord). We note that a somewhat different three-part test applied under prior law, but that test also required the State to show that the evidence was relevant to an issue other than the defendant's character. See *Peoples v. State*, 295 Ga. 44, 54 (4) (b) (757 SE2d 646) (2014) (Under prior law, the State bore the burden of showing that "the independent offense or act [was] offered not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an

evidence under Federal Rules of Evidence 403 and 404 (b), as incorporated into Georgia's new Evidence Code, is reviewed for "a clear abuse of discretion." (Citation and punctuation omitted.) *Bradshaw v. State*, - Ga. at - (3). See also *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014)"(Evidentiary rulings are reviewed under an abuse of discretion standard[.]") (citation omitted).

In this case, the record shows that the State filed its notice of intent to introduce evidence of other acts pursuant to OCGA § 24-4-404 (b) as proof of intent, motive, plan, and absence of mistake or accident. Specifically, the State identified the following acts: a 2005 charge against Brown and Rouse for trafficking in cocaine and a 2009 charge against Brown for possession of marijuana with intent to distribute.

As to the 2005 incident, a police officer testified that he received information from a concerned citizen that drugs were being "bagged" at a house in Fulton County. Upon arriving at the house, the officer observed through one of the windows three men, including Brown and Rouse, cutting and packaging crack cocaine and marijuana in the kitchen of the house. The team of officers forced entry and found the men

---

exception to the general rule of inadmissibility[.]" In addition, the State was required to show that the accused committed the independent offense or act and that there was a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.) (citation and punctuation omitted).

hiding in a bedroom closet. The house, which was in an area where most of the houses were vacant, had little furniture, but there was a TV with some cameras hooked to it. The officers seized 137 grams of crack cocaine and 11 grams of marijuana.

As to the 2009 incident, a patrol officer testified that he received a call that several men were selling and using drugs at a food mart in Fulton County. The officer went to that location, where he saw six men including Brown. The officer and his partner obtained the mens' consent to search their persons. Brown had on his person 11 bags of marijuana, collectively weighing 8.1 grams.

After hearing this evidence, the trial court found that the only relevance of the 2005 and 2009 incidents to the charges in the instant prosecution was as evidence of a propensity, "that one does that sort of thing." The court found that, as such, the other-acts evidence was inadmissible for the purposes propounded by the State. The State argues that "[t]he overarching tenet of Georgia's new evidence code is one of inclusion of evidence, and that tenet extends to OCGA § 24-4-404 (b), which now governs the admissibility of other crimes, wrongs, or acts." Under this tenet of inclusion, the State contends that the other-acts evidence at issue is relevant to an

issue other than the defendants' character because the prior uncharged offenses involved the same mental state as the instant offenses.

The State's argument glosses over the significant *exclusionary* impact of the prohibition against propensity evidence that survives in OCGA § 24-4-404 (b). Our new rule, like the federal rule, embodies the longstanding and fundamental principle that evidence of a person's other acts is inadmissible for the purpose of showing that the person has a criminal disposition or a propensity for certain conduct because of the risks inherent in such evidence in compromising the presumption of innocence and the reasonable doubt standard.[23] If the only way to find that other-

_____

[23] See generally Paul S. Milich, "The Degrading Character Rule in American Criminal Trials," 47 Ga. L. Rev. 775, 777 (2013) (The traditional common law character rule, which appeared in English courts during the Restoration Period and around the same time as the hearsay rule, prohibited use of the accused's bad character or prior, unrelated misconduct to suggest that he or she therefore was more likely guilty of the crime charged.). As the Unites States Supreme Court explained more than half a century ago:

> The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

acts evidence is relevant for a permissible purpose is by inferring that the defendant

had a propensity to commit such a crime, OCGA § 24-4-404 (b) requires that the

evidence be excluded.[24]

---

(Footnotes omitted.) *Michelson v. United States*, 335 U. S. 469, 475-476 (69 SCt 213, 93 LEd 168) (1948). See also *Amey v. State*, - Ga. App. - (1) (Case No. A14A1803, decided March 18, 2015) (accord); *United States v. Clay*, 667 F3d 689, 697 (B) (6th Cir. 2012) ("As empirical studies have shown, evidence of prior bad acts influences factfinders even when the court gives a limiting instruction." Where the nature of other-crimes evidence suggested that the accused was "a repeatedly violent offender[,]" the evidence "created a serious risk that the jury used the evidence for precisely the reasons it was counseled not to: that [he] was a bad person and a threat to society. Thus, the unfair prejudicial impact of the evidence substantially outweighed its slim probative value.") (citations and punctuation omitted).

[24] See *United States v. Clark*, 774 F3d 1108, 1114-1115 (II) (B) (7th Cir. 2014); ("[T]he proponent of the [other-acts] evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If that is done, the court must assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice, and this balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case.") (citations and punctuation omitted); *United States v. Stacy*, 769 F3d 969, 974 (II) (A) (7th Cir. 2014) ("Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to another purpose must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case.") (citation and punctuation omitted); *United States v. Procopio*, 88 F3d 21, 29 (III) (1st Cir. 1996) ("If evidence supports a chain of inference independent of any tendency of the evidence to show bad character, it is said to have 'special relevance' and not barred by Rule 404.") (citation

24

As noted above, the State asked the trial court to admit the other-acts evidence pursuant to OCGA § 24-4-404 (b) to show intent, motive, plan, and absence of mistake or accident. With regard to intent, the Supreme Court of Georgia recently explained that

> a defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue. Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind

and punctuation omitted); *United States v. Ferrer-Cruz*, 899 F2d 135, 137 (2) (1st Cir. 1990) ("[A] trial court can admit . . . evidence of past bad acts only if the evidence survives two related tests. First, it must overcome the absolute bar of Fed. R. Evid. 404 (b), which excludes evidence of a past bad act where it is relevant only because it shows bad character (i.e., the proposed logical inference includes character as a necessary link). Second, it must also survive scrutiny under Fed. R. Evid. 403, which excludes even evidence that is relevant through allowable chains of inference where the probative value of that evidence is substantially outweighed by the risks of prejudice, confusion, or waste of time.") (citations, punctuation and emphasis omitted); *United States v. Rubio-Estrada*, 857 F2d 845, 853 (II) (1st Cir. 1988), Torruella, J., dissenting (Rule 404 (b) "admits evidence of other crimes whenever it is relevant without using the inference of character anywhere in the chain of inference. . . . [T]he rule excludes evidence of other crimes in any case in which one of the inferences in the chain of circumstantial evidence is the inference from the act to the defendant's character or propensity to commit crimes.") (citations, punctuation, and footnotes omitted).

25

required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied.

(Citation and punctuation omitted.) *Bradshaw v. State*, - Ga. at - (3). We are mindful, however, that the intent exception must not be allowed to swallow the general rule against admission of prior bad acts.[25] As we have explained, to determine whether

---

[25] See *United States v. Miller*, 673 F3d 688, 697 (III) (7th Cir. 2012) ("[I]f a mere claim of innocence were enough to automatically put intent at issue, the resulting exception would swallow the general rule against admission of prior bad acts. . . . [I]dentifying a Rule 404 (b) exception, such as intent, that is 'at issue' is only the first step of the analysis.") (citations omitted); *United States v. Matthews*, 431 F3d 1296, 1314, n.1 (11th Cir. 2005), Tjoflat, J., specially concurring (Where other-acts evidence "demonstrates nothing more than . . . a prior intention to violate drug laws[,] it must be excluded as inadmissible propensity evidence. If the inferential chain must run through the defendant's character – and his or her predisposition towards a criminal intent – the evidence is squarely on the propensity side of the elusive line" between evidence admissible to demonstrate intent and inadmissible evidence of propensity.); Paul S. Milich, "The Degrading Character Rule in American Criminal Trials," 47 Ga. L. Rev. at 796-797 (It is important to protect the presumption of innocence for those with a criminal past, in part, because jurors "are a major check against police and prosecutorial abuse, laziness, and incompetence. Anything that encourages the jury to scrutinize the prosecution's case carefully and skeptically likewise encourages the police and prosecution to rise to the task. To the extent that evidence of the accused's bad character makes it easier to convict, it is undesirable for police or prosecutors to factor that advantage into their decisions as to who and how to investigate, arrest, or prosecute." In addition, the introduction of evidence of past bad acts discourages jurors from erring on the side of acquittal. "This is the heart of the moral-political argument for the character rule: we want jurors, in all cases, to exercise the most heightened scrutiny of the state's evidence, to give the benefit of the doubt and then some to a fellow citizen who stands in jeopardy of tasting the state's awesome power to take away that citizen's liberty. The very idea that we

26

intent is actually in issue in a case, "[t]he test is to ask: under the facts of the case, is there any danger that a rational jury could find that although the defendant committed the objective, charged acts, he did not intend to do so?" (Citation and punctuation omitted.) *Chynoweth v. State*, - Ga. App. - (3) (768 SE2d 536) (2015).

With regard to motive, which "has been defined as the reason that nudges the will and prods the mind to indulge [a] criminal intent[,]"[26] other-acts evidence may be admitted to show the defendant's motive for committing the crime with which he is charged, but such evidence may not be admitted

> to demonstrate a propensity to act in accordance with the character indicated by that other crime or conduct. . . . [T]he fact that the accused has committed one kind of crime in the past does not, without more, prove his motive to commit the same kind of crime again. Such logic would make all prior robberies admissible in any robbery case, all prior murders admissible in any murder case, and so on.

(Citations and punctuation omitted.) *Amey v. State*, - Ga. App. - (1) (b) (Case No. A14A1803, decided March 18, 2015). For example, evidence that the defendant had been threatened with violence for nonpayment of a debt incurred in a drug transaction

---

neither need nor desire such a vigilant jury when the defendant has a criminal history violates the most basic notions of equal protection.") (footnotes omitted).

[26] (Citation and punctuation omitted.) *Bradshaw v. State*, - Ga. at - (3).

27

may establish impecuniousness or an imminent financial burden on the defendant as a motive for robbery. Id.

In this case, the State's proffer at the hearing on the other-acts evidence authorized the trial court to find that the jury could only use the evidence to find that Brown and Rouse had intended to deal drugs before and, therefore, the jury could believe they were more likely to have the intent, motive, and plan to deal drugs again. This is precisely the circumstantial chain that is prohibited since all that it proves is that, because there is some evidence that they dealt drugs in the past, they are likely to have committed the present crime. The only logical link between the two allegedly common mental states is the defendants' alleged propensity towards dealing in drugs. See *United States v. Matthews*, 431 F3d 1296, 1314, n.1 (11th Cir. 2005), Tjoflat, J., specially concurring; *United States v. Rubio-Estrada*, 857 F2d at 853 (II), Torruella, J., dissenting. Because the State failed to explain how a jury could find, in light of the prior acts, that it is more likely that the defendants had the intent, motive, or plan to traffick in cocaine and to possess marijuana with intent to distribute *without* using the inference of character anywhere in the chain of inference, the trial court did not abuse its discretion in ruling that the evidence of past crimes was inadmissible under OCGA § 24-4-404 (b). *Amey v. State*, - Ga. App. at - (1) (b); *Ashley v. State*, - Ga. App. - (2)

(Case No. A14A1848, decided March 30, 2015) (decided under analogous provisions of the former Evidence Code). See *Thompson v. State*, - Ga. App. - (1) (Case No. A14A2161, decided March 30, 2015) (A proper application of the abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach, and there will be occasions in which the appellate court will affirm the evidentiary ruling of a trial court even if the appellate court might have ruled otherwise had the admissibility of the evidence been its call to make.) (citation and punctuation omitted); *United States v. Wilson*, 605 F3d 985, 1023 (VI) (D. C. Cir. 2010) (An appellate court reviews a trial court's decision whether to admit other-acts evidence "for abuse of discretion" and "give[s] much deference to the [trial] court's decision.") (citations and punctuation omitted); *United States v. Cassell*, 292 F3d 788, 792 (D.C. Cir. 2002) (accord); *United States v. Rubio-Estrada*, 857 F2d at 846 (I) ("[C]urrent law, as embodied in the Federal Rules of Evidence and numerous precedents interpreting those rules, gives the [trial] court, not [the appellate] court, the power to decide whether or not to admit a [defendant's] prior conviction.") (emphasis omitted).[27]

---

[27] Cf. *Bradshaw v. State*, - Ga. at - (3) (Where the defendant was charged with murdering a drug buyer who balked at paying for drugs the defendant had delivered, another incident, six months earlier, when the defendant murdered another drug buyer

*Judgment affirmed in part and reversed in part in Case No. A15A0456.*

*Judgment vacated in Case No. A15A0457. Dillard, J., concurs fully in Divisions 1*

*and 2, and in judgment only in Division 3. McFadden, J., concurs fully and specially.*

---

who refused to pay for drugs his brother had delivered involved the same mental state and showed the defendant's willingness to use violence when he or someone close to him was cheated in a drug deal. Consequently, the trial court did not abuse its discretion in admitting evidence of the earlier murder for the purpose of showing the defendant's intent and motive to commit the later crime.); *Chynoweth v. State*, - Ga. App. at - (3) (Where the defendant was charged with riot in a penal institution and obstruction of a law enforcement officer, based on his attack on two law enforcement officers who were transporting him to a hearing, there was evidence that the defendant had been prescribed antipsychotic medication, and the defendant raised defenses concerning lack of mental capacity and mental illness, there was a disputed issue concerning the defendant's state of mind and a danger that "a jury could have concluded that[,] while he committed the charged act, he did not intend to do so." Consequently, the trial court did not abuse its discretion in permitting other-acts evidence of the defendant's unprovoked attack on a cellmate for the purpose of showing his intent and the absence of mistake or accident.) (citation omitted).

A15A0456; A15A0457. THE STATE v. BROWN, et al.


DILLARD, Judge, concurring specially.

I concur fully as to Divisions 1 and 2 of the majority's opinion. I concur in judgment only as to Division 3 because I do not agree with all that is said in that division of the majority opinion. Thus, the majority's opinion in Division 3 decides only the issues presented in that division and may not be cited as binding precedent in future cases. *See* Court of Appeals Rule 33 (a).

A15A0456, A15A0457. THE STATE v. BROWN, et al.

MCFADDEN, Judge, concurring.

I concur fully in the majority opinion. I write separately to lament the ease with which this spectacle - an unauthorized criminal trial that the prosecutor was compelled to boycott leading to ineffective acquittals that an appellate court must unwind - could have been avoided.

When this case was called for trial, the state told the trial court that it had appealed her suppression order. The trial court erroneously replied that the state's notice of appeal was ineffective. At noon that same day, the state filed an emergency motion with this court. Less than four-and-a-half hours later, we granted the emergency motion and stayed the trial. But by that time, the purported trial had taken place and the purported acquittals had been entered.